IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

PATRICIA JEAN GRANIER                                                    PLAINTIFF

V.                            CASE NO.: 1:12CV00071 BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration[1]                                        DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

      Plaintiff Patricia Jean Granier appeals the final decision of the Commissioner of

the Social Security Administration (the "Commissioner") denying her claim for

Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security

Act (the "Act").[2]  For reasons set out below, the decision of the Commissioner is

AFFIRMED.

I.      <u>Background</u>

      On October 21, 2008, Ms. Granier protectively filed for SSI, alleging disability

beginning August 1, 1999, due to depression, anxiety, panic attacks, carpal tunnel

syndrome in both wrists, fibromyalgia, migraines, right leg pain, hypertension, stomach

pain, and heartburn.  (Tr. 52, 144, 174)  Ms. Granier's claims were denied initially and

---

[1]  On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  She has been substituted for named Defendant Michael J. Astrue under Fed.R.Civ.P. 25.

[2]  At the administrative hearing, Ms. Granier amended her disability onset date to October 21, 2008.  (Tr. 17, 47-48)  This amendment was based on a previous denial of benefits.  (Tr. 43)  Ms. Granier acknowledged that, as a result of the amendment, she did not qualify for Disability Insurance benefits under Title II of the Act.  (Tr. 48)

upon reconsideration.  At her request, an Administrative Law Judge ("ALJ") held a hearing on June 8, 2010, at which Ms. Granier appeared with her attorney.  (Tr. 40)  At the hearing, the ALJ heard testimony from Ms. Granier and a vocational expert ("VE").  (Tr. 40-68)

The ALJ issued a decision on September 7, 2010, finding that Ms. Granier was not disabled under the Act.  (Tr. 17-28)  On June 14, 2012, the Appeals Council denied Ms. Granier's request for review, making the ALJ's decision the Commissioner's final decision.  (Tr. 1-5)

Ms. Granier was forty-three years old at the time of the hearing.  (Tr. 45)  She was 5' tall and weighed approximately 160 pounds.  (Tr. 45)  She had completed high school and had received a life and health insurance agent certificate.  (Tr. 45, 51)

## II.   <u>Decision of the Administrative Law Judge</u>

The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g) (2005).

The ALJ found that Ms. Granier had not engaged in substantial gainful activity since her alleged disability onset date.  (Tr. 19)  And he found that Ms. Granier had the following severe impairments: hypertension, bilateral carpal tunnel syndrome post-release surgery, fibromyalgia, a depressive disorder, and an anxiety disorder.  (Tr. 19-22)  The ALJ also found, however, that Ms. Granier did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.926).  (Tr. 22-23)

The ALJ determined that Ms. Granier had the residual functional capacity ("RFC") to perform light work, except she was limited to frequent, but not repetitive, use of her hands; she would be limited to performing simple job tasks, with only incidental contact with the public.  (Tr. 23-26)

The ALJ determined that Ms. Granier's RFC would preclude performance of her past relevant jobs as a warehouse worker, municipal court clerk, data entry worker, and sales clerk.  (Tr. 26, 28)  After considering VE testimony, the ALJ determined Ms. Granier could perform the jobs of payroll or records clerk, and cleaner or maid.  (Tr. 27) The ALJ also noted that a finding of "not disabled" was appropriate under the framework of Medical-Vocational Rule 202.21.  (Tr. 27-28)  Accordingly, the ALJ found that Ms. Granier was not disabled.  (Tr. 27)

III.   **Analysis**

     A.   *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

     B.   *Plaintiff's Arguments for Reversal*

Ms. Granier claims the ALJ's decision was not supported by substantial evidence because: (1) the ALJ failed to assess whether she met Impairment Listing 1.02 for her inability to ambulate effectively; (2) the ALJ erred in his assessment of her treating physician's opinion that she was disabled; (3) the ALJ erred in his assessment of Ms. Granier's fibromyalgia and chronic pain; (4) the ALJ erred in his assessment of Ms. Granier's credibility; and (5) the ALJ presented an insufficient hypothetical to the VE. (#10)

4

C.   *Impairment Listing*

A claimant has the burden of proving that an impairment or combination of impairments meets or equals a Listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing references omitted).

Ms. Granier argues that she met the requirements of Impairment Listings 1.02 and 1.00(B)(2)(b) and (d) due to her alleged inability to ambulate effectively. (#10, pp. 12-14)  After reviewing her brief, and the entire 800-page record, this argument edges perilously close to running afoul of Rule 11(b) of the Federal Rules of Civil Procedure. There is no medical evidence indicating that Ms. Granier could not ambulate effectively, which relates to Listing 1.02.  Ms. Granier herself testified that she could walk, though with some difficulty. (Tr. 55-56)  She was capable of carrying out activities of daily living. (Tr. 248)  While there is some evidence of pain, Ms. Granier has failed to meet her burden to show that she met a single criterion for Listing 1.02, much less all criteria for that Listing.

The other Listings cited by Ms. Granier, Listing 1.00(B)(2)(b) and (d), are definition sections.  See 42 U.S.C. APP.; 20 C.F.R. PT. 404, Subpt. P, App. 1.  It appears doubtful that Ms. Granier's attorney read these sections.  Listing 1.00(B)(2)(b)(1) defines ineffective ambulation as "having insufficient lower extremity functioning to permit

independent ambulation without the use of a hand-held assistive device that limits the

functioning of both upper extremities."  The very next section, 1.00(B)(2)(b)(2), gives

examples of ineffective ambulation as "the inability to walk without the use of a walker,

two crutches, or two canes . . . the inability to carry out routine ambulatory activities, such

as shopping . . . ."

Ms. Granier did not use crutches, a walker, a wheelchair, a cane, or any other

assistive device to walk.  (Tr. 168)  She testified that she could shop for groceries.  (Tr.

56)

Ms. Granier failed to support this argument with evidence in the record.  By failing

to identify or support her Listing argument, Ms. Granier waived this claim.  See *Aulston*

*v. Astrue*, 277 F. App'x 663, 664 (8th Cir. 2008)(declining to consider undeveloped

argument that claimant met the requirements of a particular Listing).  Even if she had not

waive this argument, she failed to meet her burden of proving she met an Impairment

Listing.

      D.    *Treating Physician's Opinion on Disability*

Ms. Granier argues that the ALJ erred by not crediting her treating physician's

opinion that she was disabled.  Ms. Granier begins her argument by stating:

> Dr. Moody and the other physicians who have followed Plaintiff for
> a number of years [sic].  Dr. Moody stated Plaintiff was unable to work and
> cervical spine prepared a report [sic].  Dr. Moody had imaging of Plaintiff's
> lumbar spine, cervical spine and right knee [sic].  The records reflect
> Plaintiff has serious health conditions, in addition to Plaintiff's back,

> neuropathy, and right knee and he based his opinion on the medical records
> [sic].

(#10, at p. 15).

This section is barely intelligible.  Ms. Granier indicates, however, that this argument is based on Dr. Moody's opinion that she was disabled.  Ms. Granier states:

> Dr. Moody found Plaintiff disabled.  The Administrative Law Judge chose
> to discredit Dr. Moody's opinion.  Based on what evidence? This opinion is
> totally consistent with the objective evidence in this claim.  (#10, at p. 15)

Ms. Granier also claims that Dr. Moody was qualified to make the judgment regarding her disability.  (#10, at p. 17)

This argument flies in the face of black-letter law.  First, a physician's opinion that a claimant is disabled is not entitled to controlling weight.  See *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.").  Since at least 1991, the Court of Appeals for the Eighth Circuit has flatly held that a treating physician is not qualified to make the disability judgment.  See *Nelson v. Sullivan*, 946 F.2d 1314, 1316 (8th Cir. 1991) (statements that a claimant could not be gainfully employed are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); see also *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) (same) and *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002)

(same).  Ms. Granier in no way makes a good-faith argument for reversing existing law. Instead, she makes inaccurate assertions that are contrary to the law.

Second, Ms. Granier makes the false statement that the ALJ discredited Dr. Moody's opinion.  (#10, at pp. 5 and 15)  She failed to cite the record, and this Court's thorough review has not unearthed any support for this assertion.  (Tr. 17-28)  Dr. Moody apparently worked at Oak Park Medical.  (Tr. 395)  The ALJ noted regular treatment at Oak Park Medical, but stated it was "unclear if the claimant is receiving treatment from a physician."  (Tr. 26)

The ALJ did not "discredit" Dr. Moody's opinion; if fact, he did not consider it at all.  Why?  Dr. Moody's opinion was rendered almost *two months after* the ALJ issued his decision.  (Tr. 27, 395) The ALJ did not – indeed could not – consider an opinion that did not exist.

Ms. Granier also claims that the ALJ "stated the state agency physician's opinion is accorded more weight than Plaintiff's treating physician."  (#10, at p. 15)  She fails to cite to the record.  This is undoubtedly because the ALJ never made the statement.  (Tr. 17-28)  Again, the opinion Ms. Granier leans on to support her point did not exist at the time the ALJ issued his decision.

In the entire argument section there is not one single citation to the record.  (#10, pp. 15-18)  This Court states in every scheduling Order, in bold type, for emphasis, that "**[a]ny argument in a brief that is not supported by relevant law and argument (with**

**citation to relevant portions of the transcript), will be considered to have been waived by the briefing party.**"  (#9, at p. 2)(emphasis in original)  But even if Ms. Granier had not waived this argument, the argument fails because it is factually and legally off base.

      E.    *Residual Functional Capacity*

      Mr. Granier argues that the ALJ erred in assessing her fibromyalgia and chronic pain.  (#10, pp. 18-19)  This is essentially an argument about RFC.

      The ALJ bears the primary responsibility for assessing a claimant's RFC. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010).  It is the claimant's burden, however, to prove RFC.  *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

      In the argument section of her brief, Ms. Granier cites but one page of the record for support.  (#10, at p. 18) She refers to the citation to support her claim that the ALJ discredited her fibromyalgia based on a cervical spine x-ray showing reverse spondylolisthesis at C2-3, C3-4.  (#10, p. 18)  Oddly, the citation is to a form letter from the ALJ advising Ms. Granier's attorney to review the exhibit file in preparation for the administrative hearing.  (#10, at p. 18) (Tr. 33)  Assuming this was a typographical error, this Court attempted, without success, to find support for this assertion.[3]

---

[3] It appears, as alleged by the Commissioner, that an X-ray showing reverse spondylolisthesis at C2-3, C3-4 does not exist, at least in this record.  (#11, at p. 27, fn. 16)

It would have been error had the ALJ discredited Ms. Granier's fibromyalgia based on a cervical spine x-ray showing reverse spondylolisthesis at C2-3, C3-4.  (#10, p. 18) But in this record *there are no x-rays showing reverse spondylolisthesis at C2-3, C3-4.* (Tr. 1-800)  There are x-rays– taken more than a year *after* the ALJ issued his decision – showing mild to moderate conditions at the C4-C7 cervical spine.  (Tr. 450, 453)  But nothing close to what Ms. Granier has alleged.

Ms. Granier also complains about MRIs that the ALJ allegedly "threw out."  (#10, at p. 7)  True to course, Ms. Granier failed to cite the record in support of this allegation. In fact, the only MRIs in the record were completed *more than a year after the ALJ issued his decision*.  (Tr. 451-452)  And these MRIs concern the lumbar, not cervical, spine.

Regardless, the ALJ clearly considered Ms. Granier's fibromyalgia.  (Tr. 21-22, 25-26)  He even found that it was a severe impairment.  (Tr. 19)  There is no merit to the argument that the ALJ did not understand the disease of fibromyalgia.  (#10, at p. 18)

F.     *Credibility Determination*

Ms. Granier also argues that the ALJ erred by discrediting her mental impairments. (#10, at p. 19)  Nowhere in the entire argument section of her brief did Ms. Granier cite to a single page of the record for support.  (#10, pp. 19-20)  Moreover, she failed to identify a single subjective complaint that the ALJ discredited.  And she failed to identify a single mental impairment.  Instead, a rote recitation focuses on pain.  (#10, pp. 19-20)

Ms. Granier waived this argument by failing to support it.  Regardless, the ALJ gave sufficient reasons for discrediting Ms. Granier's more extreme allegations.  (Tr. 24-26)

G.   *Vocational Expert Testimony*

Ms. Granier next argues that the ALJ erred in presenting an insufficient hypothetical to the VE.  (#10, pp. 20-22)  This argument is based on Ms. Granier's alleged mental limitations.  (#10, p. 21)

Ms. Granier again failed to cite to a single page in the record to support this point on appeal.  While she mentions several alleged impairments, she failed to identify even one limitation that the ALJ's hypothetical failed to incorporate.  As a result, Ms. Granier waived this argument.  Even if she had not waived this argument, the ALJ's RFC determination, which was the basis for the VE hypothetical, was consistent with the findings of the only acceptable mental health professional to examine Ms. Granier.  (Tr. 25, 240-251)

IV.   **Conclusion**

The brief submitted in support of Ms. Granier's appeal is woefully deficient.  The Court, nonetheless, has given Ms. Granier every consideration and drawn every fair inference, knowing that she was not the author of the brief.  Undoubtedly, Ms. Granier suffered from several severe impairments.  While these impairments caused physical and mental limitations, they did not render her disabled under the Act.

11

The Court has reviewed all of the evidence in the record.  Despite her impairments, there is sufficient evidence in the record as a whole to support the Commissioner's determination that Patricia Jean Granier retained the residual functional capacity to perform jobs existing in significant numbers in the economy.

Accordingly, her appeal is DENIED, and the Clerk of Court is directed to close the case, this 26th day of June, 2013.

UNITED STATES MAGISTRATE JUDGE